[Cite as *Thornton v. Delatore*, 2010-Ohio-6391.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| GARY THORNTON, et al., | ) | |
| | ) | CASE NO.    09 MA 192 |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| JASON DELATORE, M.D., et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas Court,
Case No. 08CV3808.

JUDGMENT:     Affirmed.

APPEARANCES:
For Plaintiffs-Appellants:     sAttorney Percy Squire
514 South High Street
Columbus, Ohio  43215

For DefendantsAppellees:     Attorney Douglas Leak
One Cleveland Center, Suite 900
1375 East Ninth Street
Cleveland, Ohio  44114

Attorney Michael Hudak
222 South Main Street
Akron, Ohio  44308

Attorney Marshall Buck
100 Federal Plaza East, Suite 926
Youngstown, Ohio  44503

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  December 22, 2010

VUKOVICH, P.J.

¶{1}  Plaintiff-appellant Gary Thornton, et al. appeals the decision of the Mahoning County Common Pleas Court granting summary judgment to plaintiff-appellee Jason Delatore, M.D. and the decision granting summary judgment to plaintiff-appellee St. Elizabeth Health Center.  As to the physician, appellant contends that the trial court erred in ruling that the one-year medical malpractice statute of limitations had expired.  The physician counters that the cognizable event was the amputation of appellant's leg, not the information allegedly received two months later concerning the physician's negligent failure to perform a test that may have prevented the amputation.

¶{2}  Appellant submitted no summary judgment material concerning the information he allegedly received concerning the physician's omissions.  Rather, appellant's deposition established that he was suspicious of the physician's treatment even prior to the amputation.  This suspicion combined with appellant's refusal to be treated by this physician and the subsequent amputation of his leg constituted a cognizable event which would alert a reasonable person of the need to investigate the cause of the amputation.  Thus, the trial court's decision granting summary judgment to the physician is upheld.

¶{3}  As to the hospital, appellant argues that the trial court erred in holding that the test was not satisfied for holding a hospital liable for an independent contractor's negligence.  The hospital responds that appellant knew the physician was not employed by the hospital and that a reasonable person would not believe that the physician was acting under the hospital's authority.  The hospital alternatively argues that its motion to dismiss should have been granted due to appellant's failure to file an affidavit of merit under Civ.R. 10(D)(2).

¶{4}  There was no evidence that appellant, without notice or knowledge to the contrary, looked to the hospital, as opposed to the individual practitioner, to provide medical care.  In fact, he admitted that he was specifically informed about Dr. Delatore's employment status, and his deposition testimony establishes he viewed the hospital as the mere situs for his treatment.  As such, the judgment of the trial court is hereby affirmed.

## STATEMENT OF THE CASE

**¶{5}** Appellant was diagnosed with circulatory problems as a result of diabetes. In November of 2003, appellant's primary care physician sent him to the hospital due to a foot infection for consultation with a vascular surgeon. He expected to be treated by Dr. Kollipara, but Dr. Delatore arrived in his place. (Depo. 17). According to appellant's deposition, Dr. Delatore told him that he was employed by Dr. Kollipara. (Depo. 56-57). Appellant also described Dr. Delatore as being partners with Dr. Kollipara. (Depo. 14-15). During that hospital stay, appellant's toes had to be amputated and a bypass was inserted in his leg. (Depo. 19).

**¶{6}** Appellant's follow-up appointment was at Dr. Delatore's private office, across the street from the hospital. Thereafter, Dr. Delatore said he would be better able to serve appellant at the Wound Care Center at the hospital. Dr. Delatore thus set up weekly appointments for appellant when he was scheduled to be at the Center. (Depo. 19). Appellant noticed a list of nine different doctors that worked out of the Center, but Dr. Delatore's name was not on the list. (Depo. 64). Appellant noted that he was billed by the hospital for the office visits and was separately billed by Dr. Kollipara for Dr. Delatore's services. (Depo. 64). He disclosed that he thought this was unfair and that he thought Dr. Delatore should have just treated him at his private office across the street to save him money. (Depo. 65).

**¶{7}** On Memorial Day weekend, appellant noticed a blister on the bottom of his foot. The next Wednesday, appellant went to the Center and saw a Dr. Pesa, who told appellant to come in on Monday when Dr. Delatore would return. (Depo. 22-23). When appellant returned, Dr. Delatore debrided the blister, rongeured the bone, and wrapped the wound. Appellant asked Dr. Delatore, "don't you think I need an antibiotic?" Dr. Delatore responded in the negative. (Depo. 22, 24). Appellant thought that since he was a diabetic and he was being cut, he would receive an antibiotic. (Depo. 26).

**¶{8}** A week after the debridement, appellant went to Dr. Delatore complaining of foot swelling and pain, and Dr. Delatore admitted him to the hospital. (Depo. 27-28). Appellant stated that he did not want anything done to him there and asked to be transferred to the Cleveland Clinic, where it took five days for a room to

open. (Depo. 30-31, 33). On June 28, 2004, appellant underwent a below the knee amputation and stayed in the Cleveland Clinic for a week.

¶{9} On September 9, 2005, appellant filed a complaint against Dr. Delatore for medical malpractice and against St. Elizabeth Health Center under agency principles. Appellant explained that he filed the lawsuit against Dr. Delatore because he believed that he did something wrong by not providing an antibiotic. (Depo. 51-52, 70); (Answers to Interrogatories). Appellant disclosed that he filed suit against the hospital because Dr. Delatore's acts and omissions occurred on the premises and because he had to pay bills to the hospital. (Depo. 67-68, 71).

¶{10} Before the court could rule on various defense motions, the complaint was voluntarily dismissed. On September 26, 2008, which was within one year of the dismissal, appellant refiled the complaint. In June of 2009, both Dr. Delatore and the hospital filed motions to dismiss as appellant failed to file an affidavit of merit as required by Civ.R. 10(D)(2). Appellant responded that this issue should be deemed waived since the defendants filed their answer without raising that issue before filing their motions to dismiss. But, see, Civ.R. 12(B), (H)(2). Appellant then attached a letter from an expert, which he described as an affidavit of merit. However, the letter was not sworn or notarized. Nevertheless, the trial court did not address these dismissal motions as summary judgment motions were also pending.

¶{11} Dr. Delatore's motion for summary judgment argued that the one-year statute of limitations for medical malpractice actions had run by June 28, 2005 at the latest. Appellant's response claimed that it was not until September of 2004 while at the Cleveland Clinic that he learned that his June 28, 2004 leg amputation may be due to Dr. Delatore's failure to conduct circulation studies after the initial toe amputation.

¶{12} On October 22, 2009, the trial court granted summary judgment for Dr. Delatore. The court pointed out that appellant's testimony disclosed that he had a subjective belief in June of 2004 that Dr. Delatore should have prescribed an antibiotic upon debridement. The court concluded that this plus the amputation was a cognizable event that should have led appellant to investigate and pursue his remedies. The court also stated that appellant produced no evidence that the cognizable event occurred in September of 2004.

¶{13} Meanwhile, the hospital had filed a motion for summary judgment on the grounds that Dr. Delatore was not an employee and that the test for holding a hospital liable for the negligence of an independent contractor physician had not been met. Appellant responded by noting that his deposition testimony showed that Dr. Delatore told him to go to the hospital. The response also stated that appellant believed that the hospital had the ultimate responsibility for his treatment and claimed that he never knew Dr. Delatore was an independent contractor.

¶{14} On October 22, 2009, the trial court granted summary judgment for the hospital, stating that there was no evidence presented that would make the hospital liable for the acts of the independent contractor physician. Appellant filed timely notice of appeal from both judgment entries.

ASSIGNMENT OF ERROR NUMBER ONE

¶{15} Appellant sets forth two assignments of error, one for each defendant-appellee. The first assignment of error provides:

¶{16} "THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT'S JASON DELATORE'S SUMMARY JUDGMENT MOTION BASED ON THE ALLEGED FAILURE OF APPELLANT TO COMMENCE THE UNDERLYING MEDICAL MALPRACTICE ACTION WITHIN ONE YEAR OF JUNE 28, 2004, THE DATE UPON WHICH AN ALLEGED COGNIZABLE EVENT WITHIN THE MEANING OF R.C. 2305.113(A), THE APPLICABLE STATUTE OF LIMITATIONS, OCCURRED."

¶{17} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶24. Summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id. When a motion for summary judgment is made and supported by Civ.R. 56, the non-movant may not rest upon the mere allegations or denials of his pleadings but must respond with affidavits or other evidence listed in the rule setting forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E). If the party does not so respond, summary judgment shall be entered against him. Civ.R. 56(E).

¶{18} An action on a medical claim shall be commenced within one year after the cause of action accrued. R.C. 2305.113(A). "[A] cause of action for medical malpractice accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury." *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 117-118.

¶{19} It has been explained that the occurrence of a cognizable or noteworthy event should lead the plaintiff to believe that his injury is related to a prior medical diagnosis or procedure and should alert the plaintiff of the need to pursue a remedy. *Allenius v. Thomas* (1989), 42 Ohio St.3d 131,133-134 (plaintiff need not have discovered all of the relevant facts). If the patient believes that he suffered harm due to the physician doing something wrong, then the patient has suffered a cognizable event. Id. at 134. Constructive knowledge of facts, rather than actual knowledge of the legal significance of those facts, is sufficient as the cognizable event puts the plaintiff on notice that he should investigate the facts and circumstances relevant to the injury. *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 549.

¶{20} In *Flowers*, the plaintiff's mammogram had been interpreted as negative for cancer. Later, she was diagnosed with breast cancer. The Court held that the cancer diagnosis constituted an occurrence of facts and circumstances that should have led the plaintiff to believe that the cancer was related to a previous misdiagnosis. Id. at 550. The Court ruled that the malpractice statute began to run at the time of the cancer diagnosis even though the plaintiff did not know all the facts and circumstances surrounding the apparent misreading of her earlier mammogram. Id. Thus, the Court upheld the trial court's grant of summary judgment for the defendant.

¶{21} Appellant argues that the statute of limitations did not begin until he learned in September of 2004 from the Cleveland Clinic that circulatory studies should have been performed after the November 2003 toe amputations. He concludes that his September 9, 2005 complaint was timely filed. Dr. Delatore has two responses to this argument. First, he contends that appellant did not sufficiently respond to the motion for summary judgment. Second, he argues that the June 28, 2004 amputation was the latest cognizable event that would have started the statute of limitations.

**¶{22}** Dr. Delatore's summary judgment evidence focused on appellant's deposition, which was attached to the physician's summary judgment motion. In responding to the summary judgment motion, appellant filed a "verified memorandum in opposition." The memorandum stated that he was hospitalized at St. Elizabeth Health Center from June 25, 2004 until July 9, 2004. However, this is at odds with his other statements that his leg was amputated at the Cleveland Clinic on June 28, 2004 and that he stayed there for at least a week thereafter. The memorandum then stated that he learned from the Cleveland Clinic in September of 2004 that the amputation was due to the failure of Dr. Delatore to conduct proper circulation studies. It was then argued that this information constituted the cognizable event and that the complaint was filed within one year after acquisition of that information.

**¶{23}** Attached to the memorandum is a "verification" stating, "In accordance with the provision of Ohio R. Civ.P. 56 this verification is my affidavit concerning the truth of the assertions set forth within this opposition." Appellant's signature is then notarized by his attorney, who drafted the opposition memorandum. Appellant did not attach an actual affidavit.[1]

**¶{24}** Materials or exhibits attached to summary judgment motions can be verified as being true by the attachment of an affidavit based upon personal knowledge indicating that the affiant is competent to testify to the matter and stating that the attached material is a true copy. *State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 467. Where the item attached to the affidavit contains both facts and argument, it is within the trial court's discretion to determine whether to accept the incorporation of the facts. Id. at 468.

**¶{25}** Here, there is no real affidavit. See *Gruenspan v. Seitz*, 124 Ohio App.3d 197, 209, fn.4 (where the Eighth District held that a "verification" in an opposition brief is not an affidavit for purposes of Civ.R. 56). Rather, a single line called "verification" purports to be an affidavit. Acceptance of such a "swear to everything my lawyer says" affidavit would require a court to pick out which portions of

---

[1]Appellant did attach his December of 2006 answers to interrogatories. Notably, he listed only the failure to provide antibiotics after the blister removal as being reason Dr. Delatore was negligent. He mentioned nothing about receiving information from the Cleveland Clinic in September in his interrogatory answers or at his deposition. Moreover, in listing his visits to the Cleveland Clinic, the answers do not mention any visits in September of 2004.

the legal memorandum are part of the affidavit and which are the attorney's legal pronouncements and arguments. This is different from accepting the contents of a verified complaint as summary judgment evidence, because pleadings are specifically listed in Civ.R. 56, whereas an opposition brief is not listed as evidence. Moreover, pleadings are factual and do not contain arguments and legal analysis as do opposition memoranda.

¶{26} This situation is distinguishable from that in the *Seminatore* case because the verification does not refer to attached items sought to be used as summary judgment evidence. Rather, the verification refers to the contents of the opposition memorandum itself. This memorandum was written by an attorney and contains general facts, law, and arguments. Furthermore, even applying *Seminatore*, it would be within the trial court's sound discretion to refuse to accept the memorandum and verification as an affidavit. See *Seminatore*, 66 Ohio St.2d at 467.

¶{27} This the trial court did when it concluded that appellant failed to produce evidence by way of affidavit, deposition, medical records, or other testimony to substantiate his claim that the cognizable event occurred in September 2004. In fact, appellant's brief does not take issue with this statement nor does it point to the fact that the opposition memorandum was verified or otherwise argue that the verification is the same as an affidavit.

¶{28} Additionally, generally stating that information was received "in September 2004" is insufficient. If the information was provided before September 9, 2004 then the statute of limitations still would have run by the time the September 9, 2005 complaint was filed.

¶{29} Regardless, the trial court did not err in finding that reasonable minds could only find that a cognizable event occurred prior to September of 2004. As aforementioned, appellant's answer to an interrogatory stated that he filed the lawsuit based upon the negligent act of failing to provide an antibiotic at the early June of 2004 office visit. Appellant's deposition stated that after Dr. Delatore removed a blister, appellant asked, "don't you think I need an antibiotic?" Dr. Delatore responded in the negative. (Depo. 22, 24). Appellant thought that since he was a diabetic receiving a foot incision, he would receive an antibiotic. (Depo. 26).

¶{30} A week after the debridement, appellant went to Dr. Delatore complaining of foot swelling and pain, and Dr. Delatore admitted him to the hospital. (Depo. 27-28). Appellant asked to be transferred to the Cleveland Clinic where his lower leg was amputated on June 28, 2004. (Depo. 30-31, 33). Appellant's deposition testimony revealed that he filed the lawsuit against Dr. Delatore because he believed that he did something wrong by not providing an antibiotic. (Depo. 51-52, 70).

¶{31} If the patient believes that he suffered harm due to the physician doing something wrong, then the patient has suffered a cognizable event. *Allenius*, 42 Ohio St.3d 131, 134. The debridement of the blister without antibiotics contrary to appellant's voiced expectations, the swelling and pain soon thereafter, and the resulting drastic amputation must be considered together with appellant's admission that he believed that he suffered harm due to Dr. Delatore's failure to provide antibiotics upon debridement. Moreover, upon his hospitalization, appellant refused to allow Dr. Delatore to make decisions regarding the need for an amputation and instead waited five days to be transferred to the Cleveland Clinic.

¶{32} Together these circumstances constitute a cognizable or noteworthy event that should have led appellant to believe that his injury was related to a prior medical act or omission and should have alerted him to the need to pursue a remedy. See id. at 133-134. See, also, *Mallory v. Lake Systs.* (July 29, 1988), 11th Dist. No. 12-183 (speaking to the drastic procedure of a toe amputation as requiring reasonable investigation into the cause by the plaintiff). This cognizable event called for diligent investigation of the actual cause. That the cause may have involved more than merely a failure to utilize antibiotics but may have also involved a failure to perform circulatory studies would not appear to eradicate the occurrence of the cognizable event. See id. (plaintiff need not have discovered all of the relevant facts).

¶{33} Constructive, rather than actual, knowledge is all that is required. *Flowers*, 63 Ohio St.3d at 549. See, also, *Taylor v. Lloyd*, 7th Dist. No. 06BE46, 2007-Ohio-1565, ¶39 (date plaintiff receives actual knowledge of exact act of malpractice is not cognizable event; rather cognizable event is date plaintiff has constructive knowledge of facts that would lead reasonable person to investigate). Based upon appellant's admissions, he had at least constructive knowledge that the amputation

was related to Dr. Delatore's negligence. For all of these reasons, the trial court's decision to grant summary judgment for Dr. Delatore on statute of limitations grounds is affirmed.

ASSIGNMENT OF ERROR NUMBER TWO

¶{34} Appellant's second assignment of error states:

¶{35} "THE TRIAL COURT ERRED WHEN IT FOUND THAT DEFENDANT ST. ELIZABETH'S HOSPITAL WAS NOT LIABLE AS A MATTER OF LAW FOR THE NEGLIGENCE OF DEFENDANT DELATORE."

¶{36} First, appellant makes mention of potential liability of the hospital for negligent credentialing. However, such a cause of action was not before the trial court when it ruled. The complaint made no allegations of negligent credentialing. Rather, the complaint only alleged that the hospital was liable on the grounds that Dr. Delatore acted within the course of his employment or apparent agency with the hospital making the hospital vicariously liable for his actions. We also note that appellant's response to summary judgment made no reference to this cause of action. As such, we refuse to address the issue of negligent credentialing. We thus move to the next issue.

¶{37} Pursuant to the doctrine of respondeat superior liability, an employer or principal is vicariously or secondarily liable for the negligence of its employee or agent, whose liability is primary. *Clark v. Southview Hosp. & Fam. Health Ctr.* (1994), 68 Ohio St.3d 435, 438. In seeking summary judgment, the hospital provided proper summary judgment material establishing that Dr. Delatore was not an employee but was rather an independent contractor. Appellant then admitted that Dr. Delatore was an independent contractor.

¶{38} In general, a principal is not vicariously liable for the negligence of an independent contractor over whom it retained no right to control the mode and manner of work. Id. However, the Supreme Court has created a fictional agency relationship, called agency by estoppel to impose vicarious liability on independent contractor physicians in the hospital context under certain narrow circumstances. See *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4459, ¶19.

¶{39} Specifically, a hospital can only be held liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners if: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice or knowledge to the contrary, the patient looks to the hospital as opposed to the individual practitioner to provide competent medical care. *Clark*, 68 Ohio St. 3d at 444-445. A patient has the right to assume he is being treated by hospital employees unless the patient viewed the hospital as merely the situs for the treating physician to practice. Id. at 445 overruling *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, syllabus at ¶4 (which set forth the following test: (1) hospital made representations leading plaintiff to believe physician was an agent operating under hospital's authority; and (2) plaintiff was induced to rely on an apparent agency relationship).

¶{40} The *Clark* holding was later limited so that it could not be read as imposing independent liability upon the hospital for the negligence of its independent contractor physicians. *Comer*, 106 Ohio St.3d 185 at ¶18. The Court explained that the hospital is merely secondarily liable and the tortfeasor-agent is primarily liable. Id. at ¶20. Thus, where the statute of limitations had expired against the negligent independent contractor physician, the suit against the hospital could not proceed. Id. at ¶5, 27-28.

¶{41} As this court overruled appellant's first assignment of error, this assignment of error can be resolved in favor of the hospital on this basis. That is, since the statute of limitations ran against the physician before the suit was filed, the agency by estoppel suit against the hospital has no basis to exist under *Comer*. In any event, summary judgment for the hospital can also be upheld on the grounds that the agency by estoppel test was not satisfied here.

¶{42} Appellant was originally sent to the hospital by his primary care physician and was told that a vascular surgeon named Dr. Kollipara would attend to him. When Dr. Delatore arrived instead, he told appellant that he was employed by Dr. Kollipara and appellant later believed that he was partners with Dr. Kollipara. (Depo. 14-15, 17, 57). During that hospital stay, appellant's toes were amputated and a bypass was inserted in his leg. (Depo. 19). Notably, this hospital stay is not even at issue here. Rather, it is the outpatient care thereafter that is at issue.

¶{43} Appellant's first follow-up appointment was at Dr. Delatore's private office, across the street from the hospital. Dr. Delatore said he would be better able to serve appellant at the Wound Care Center at the hospital and thus set up weekly appointments for appellant when he was scheduled to be at the Center. (Depo. 19). Appellant noticed a list of nine different doctors that worked out of the Center, but Dr. Delatore's name was not on the list. He was billed by the hospital for the visits and was separately billed by Dr. Kollipara for Dr. Delatore's services. (Depo. 64). Appellant believed that Dr. Delatore should have conducted the visits at his private office to save appellant money. Appellant explained that he sued the hospital because it happened there and because he had to pay bills to the hospital. (Depo. 67-68, 71). The statement in the opposition memorandum that appellant thought the hospital was ultimately responsible for his care was contradicted by this other evidence and, as set forth above, a memorandum of law that contains some factual statements need not be accepted as an affidavit for purposes of summary judgment even if it is "verified."

¶{44} Thus, there was no evidence that appellant looked to the hospital, as opposed to the individual practitioner, to provide medical care. See *Clark*, 68 Ohio St. 3d at 444-445. There was also no evidence that he lacked notice or knowledge to the contrary, and in fact, appellant admitted that he was specifically informed about Dr. Delatore's employment status. See id. Appellant's statements lead to only one reasonable conclusion: he viewed the hospital as the mere situs for his treatment. See id. He had both constructive and actual knowledge of the situation. Accordingly, summary judgment was properly entered on the grounds that the elements of agency by estoppel were not sufficiently set forth to raise a genuine issue of material fact.

¶{45} Finally, we note the alternative argument concerning appellant's failure to file an affidavit of merit. This deficiency can be contested by way of a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted because a complaint on a medical claim is not sufficient without a proper Civ.R. 10(D)(2) affidavit. *Fletcher v. University Hosp. of Cleveland*, 120 Ohio St. 167, 2008-Ohio-5379, ¶13. See, also, Civ.R. 12(B), (H)(2) (the defense of failure to state a claim can be raised in a pleading, in a motion, or at trial). However, the failure to attach an affidavit of merit requires only a dismissal without prejudice. *Fletcher*, 120 Ohio St.

167 at ¶18, fn. 4 (even where the case has already been dismissed once, the dismissal is still without prejudice, and the parties must then litigate any savings statute issue in a refiled suit). Accordingly, since the grant of summary judgment for both defendants is being affirmed (and thus the case is essentially dismissed with prejudice), the alternative argument, which could only result in our dismissing without prejudice, need not be addressed.

¶{46} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J.,
DeGenaro, J.,