[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 314.]

BONACORSI, APPELLANT, *v*. WHEELING & LAKE ERIE RAILWAY COMPANY, APPELLEE.

[Cite as *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 2002-Ohio-2220.]

*Civil procedure—Civ.R. 56—Supreme Court review of summary judgment ruling—Court of appeals' reversal of trial court's denial of railroad company's motion for summary judgment on plaintiff's inadequate-warning-device claim reversed, and trial court's judgment and jury verdict reinstated, when.*

(No. 2000-2278—Submitted January 29, 2002—Decided May 22, 2002.)

APPEAL from the Court of Appeals for Stark County, No. 1999CA00407.

———————————

**DOUGLAS, J.**

{¶1} In July 1996, plaintiff-appellant, Cris A. Bonacorsi, was seriously injured[1] when the motorcycle he was driving collided with the engine of a freight train at a railroad crossing on Howe Road in Brimfield Township, Ohio. The train was owned and operated by defendant-appellee, Wheeling & Lake Erie Railway Company ("W&LE").

{¶2} At the time of the accident, signs were posted along Howe Road warning westbound motorists, such as Bonacorsi, of the upcoming crossing. Posted approximately eight hundred fifty feet before the crossing was a round, yellow sign with a large black X flanked by two Rs. Next, about seven hundred feet from the crossing, the pavement was painted with a large white X flanked by two Rs. Three hundred feet before the crossing, the pavement marking was repeated. Immediately

———————————

1. Among other injuries, Bonacorsi's left leg was amputated at the hip, his pelvis was fractured, and one of his lungs collapsed.

before the crossing were a red triangular "yield" sign and a white, X-shaped sign with the words "RAILROAD CROSSING" written in black ("crossbuck sign"). The signs and pavement markings described above are classified as "passive warning devices" because they indicate the presence of a crossing but they do not change in any respect when a train is approaching. Section 646.204, Title 23, C.F.R. In contrast, "active warning devices" are traffic control devices activated by the approach of a train, such as flashing light signals and automatic gates that warn motorists that a train is approaching the crossing. Id.

{¶3} On the day of the accident Bonacorsi was aware that he was approaching a crossing, but because there were no active warning devices at the crossing and because foliage growing near the railroad right-of-way blocked his view, he was unaware that a train was also approaching the crossing.[2] As Bonacorsi neared the tracks his line of sight became less obstructed by the foliage and he was able to see the approaching train but he was travelling too fast to avoid a collision.

{¶4} Bonacorsi subsequently filed a claim against W&LE alleging that the accident was caused by W&LE's negligence "in failing to install active warning devices, failing to eliminate view obstructions caused by the foliage surrounding its crossing, failing to operate the train in a safe and lawful manner, including maintaining a proper lookout and maintaining control over the train so that it could avoid a collision, and by failing to properly sound the train's horn and bell."[3]

---

2. Archie Burnham, a professional engineer specializing in traffic safety, testified that at the time of the accident when a westbound motorist was three hundred forty feet from the crossing, foliage obstructed the motorist's view of all but twenty-eight feet of the railroad tracks north of the crossing. He further testified that, taking into account the posted speed limit of Howe Road (forty miles per hour) and the train speed limit (twenty-five miles per hour), published safety guidelines provide that at three hundred forty feet from the crossing, westbound motorists should be able to see at least two hundred sixty feet of the track north of the crossing in order to stop their vehicles in reaction to seeing a train.
3. Bonacorsi further alleged that because W&LE was aware of prior accidents at this crossing, its conduct in failing to install active devices and/or failing to eliminate the sight obstruction at this crossing constituted willful and wanton misconduct and illustrated a conscious disregard for the

**{¶5}** W&LE moved for partial summary judgment asserting that Bonacorsi's claim that the warning devices were inadequate was preempted by federal law. In this regard, W&LE asserted that federal funds paid for the installation of the crossbuck sign posted on Howe Road and that warning devices installed using federal funds are adequate as a matter of federal law.[4] Thus, W&LE argued, the subject of warning-device adequacy with regard to the Howe Road signs has been covered, thereby triggering the preemption provision of Section 20106, Title 49, U.S.Code.[5]

**{¶6}** As proof that federal funds were used to install the Howe Road crossbuck sign, W&LE submitted an affidavit executed by Bruce Brown, an

---

rights and safety of others. Thus, Bonacorsi argued that he was entitled to punitive as well as compensatory damages. The trial court refused to submit the punitive damages claim to the jury.

4. **{¶a}** Section 646.214(b), Title 23, C.F.R. provides:

**{¶b}** "(3)(i) 'Adequate warning devices' * * * on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:

**{¶c}** "(A) Multiple main line railroad tracks.

**{¶d}** "(B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.

**{¶e}** "(C) High Speed train operation combined with limited sight distance at either single or multiple track crossings.

**{¶f}** "(D) A combination of high speeds and moderately high volumes of highway and railroad traffic.

**{¶g}** "(E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.

**{¶h}** "(F) A diagnostic team recommends them.

**{¶i}** "(ii) In individual cases where a diagnostic team justifies that gates are not appropriate, FHWA [Federal Highway Administration] may find that the above requirements are not applicable.

**{¶j}** "(4) For crossings where the requirements of §646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA."

5. **{¶a}** Section 20106, Title 49, U.S.Code provides:

**{¶b}** "Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement."

**{¶c}** Although the preemption provision contains an exception, it is inapplicable in this case.

employee of W&LE, stating that prior to the accident the crossbuck sign at the Howe Road crossing was installed with federal funds as part of Ohio's Buckeye Crossbuck Program. Attached as an exhibit to Brown's affidavit was a pamphlet created by the Ohio Department of Transportation ("ODOT"), titled "Ohio's Buckeye Crossbuck Program." The pamphlet described an experimental program designed to determine the effectiveness of a newly designed crossbuck sign. According to the pamphlet, the program required that crossbuck signs at all passive crossings in Ohio be replaced with new crossbuck signs.[6]

{¶7} Also attached to Brown's affidavit was an agreement between ODOT and W&LE, wherein W&LE agreed to replace existing crossbuck signs at all of its passive crossings in Ohio by the end of 1993 as part of the Buckeye Crossbuck Program. ODOT agreed to supply the new crossbuck signs and to reimburse W&LE for its installation costs. The agreement indicated that the reimbursement money would come from federal funds.

{¶8} In his brief opposing W&LE's motion, Bonacorsi attacked the sufficiency of Brown's supporting affidavit, arguing that the affidavit was not based on Brown's personal knowledge that federal funds were spent on the installation of the crossbuck sign at the Howe Road crossing. See Civ.R. 56(E), which requires that affidavits in support of motions for summary judgment be made on "personal knowledge." In addition, Bonacorsi argued that even if W&LE could prove that federal funds had been used to install the crossbuck sign, that fact alone would not

---

6. According to ODOT's pamphlet, there were more than three thousand seven hundred passive crossings in Ohio when the Buckeye Crossbuck Program began. The program required that crossbuck signs at one-half of the passive crossings, selected at random, were to be replaced with the newly designed Buckeye crossbuck signs (described as a "highly reflectorized red and white" crossbuck sign) and the other half with standard black-and-white crossbuck signs that had been "upgraded" with reflective tape on all four sides of the post. The Howe Road crossing fell into the latter category, i.e., the crossbuck sign installed at the Howe Road crossing was the upgraded standard crossbuck sign. Once the new signs were in place, ODOT planned to study accident statistics and human behavior at the crossings to compare the effectiveness of both types of signs.

be sufficient to trigger preemption. Bonacorsi argued that W&LE was also required to show that the Federal Highway Administration ("FHWA") had approved the installation.

{¶9} W&LE replied that proof of federal funding was sufficient, in and of itself, to trigger preemption because when federal funds are used to install warning devices at a railroad crossing it is presumed that the devices meet FHWA approval and thus meet the federal standards of adequacy.

{¶10} The trial court agreed with Bonacorsi and found that W&LE had failed to prove that federal funds were used to install the crossbuck sign. In addition, the trial court rejected W&LE's assertion that federal funding of sign installation was, in and of itself, sufficient to trigger preemption of an inadequate-signalization claim, and held that proof of FHWA approval was also required in this case. Accordingly, the court denied W&LE's motion for partial summary judgment.

{¶11} Thereafter, W&LE, with leave of court, filed an additional motion for partial summary judgment, again arguing that Bonacorsi's inadequate-warning-device claim was preempted. Attached to the motion was an affidavit executed by Susan Kirkland, an employee of the Ohio Rail Development Commission.[7] In her affidavit, Kirkland stated that the crossbuck signs installed at all passive crossings in Ohio, including W&LE crossings, were installed with federal funds as part of the Buckeye Crossbuck Program.

{¶12} In his response to W&LE's motion, Bonacorsi argued that Kirkland, like Brown, did not have personal knowledge of the statements made in her affidavit regarding federal funding of the installation of the Howe Road crossbuck sign. In support of his assertion, Bonacorsi referred to Kirkland's deposition testimony in which Kirkland testified that ODOT was responsible for handling

---

7. The Ohio Rail Development Commission was created by R.C. 4981.02(A).

federal funds, that she did not work for ODOT, and that her knowledge of federal funding of sign installation at railroad crossings came from other people. In addition to his argument that Kirkland lacked the personal knowledge required by Civ.R. 56(E), Bonacorsi renewed his assertion that proof of federal funding alone was insufficient to preempt a state-law claim of inadequate warning devices.

{¶13} The court agreed with Bonacorsi that federal funding alone was not sufficient to trigger preemption and, consequently, denied W&LE's motion. The court did not discuss whether Kirkland's affidavit was sufficient to establish that federal funds were used to install the Howe Road crossbuck sign.

{¶14} W&LE subsequently moved to vacate the court's denial of its motion for partial summary judgment.[8] The court again reviewed W&LE's additional motion for partial summary judgment, and again denied it. The court stated, "While federal funds may have been used in the purchase and/or installation of the * * * crossbuck signs at the Howe Road crossing, there is no evidence that the Federal Highway Administration approved the * * * crossbuck signs as being adequate to protect motorist safety at such crossing."

{¶15} Thereafter, the matter proceeded to a jury trial. The jury found for Bonacorsi, but further found that both Bonacorsi and W&LE were negligent and determined that each party's negligence contributed equally to causing the accident. In response to a written jury interrogatory labeled "One-A" that asked, "If you find that [W&LE] was negligent, in what respect(s) do you so find?" the jury responded in writing, "Two prior accidents; railroad did not initiate change in signals and signs. Proving ordinary care. Plaintiff unable to see the train."

{¶16} The jury determined that Bonacorsi's compensatory damages were $1,664,200. Reducing the verdict by fifty percent to account for Bonacorsi's

---

8. W&LE's motion to vacate alleged that the order denying its motion for partial summary judgment was invalid because Judge Sinclair issued the order after Judge Lile had been assigned to preside over the matter.

contributory negligence, the trial court entered judgment in favor of Bonacorsi in the amount of $832,100.

{¶17} W&LE appealed raising numerous assignments of error.[9] The assignment relevant to this appeal asserted that the trial court erred in denying W&LE's motion for partial summary judgment.

{¶18} The court of appeals, upon de novo review of W&LE's motion for partial summary judgment, found that Kirkland's affidavit established that federal funds had been used to pay for installation of the Howe Road crossbuck sign. In addition, the court held that proof of federal funding was, in and of itself, sufficient to trigger preemption of Bonacorsi's inadequate-warning-device claim. In support of its holding the court cited *Norfolk S. Ry. Co. v. Shanklin* (2000), 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374, which was decided while this case was pending in the court of appeals. Consequently, the court of appeals reversed the trial court's denial of W&LE's motion for summary judgment on Bonacorsi's inadequate-warning-device claim.

{¶19} Moreover, the court found that the jury's response to Interrogatory One-A clearly revealed that the jury's verdict against W&LE was based solely on Bonacorsi's inadequate-warning-device claim. Accordingly, the court reversed the jury's verdict, vacated Bonacorsi's award, and entered judgment in favor of W&LE.

{¶20} The cause is before this court upon our allowance of a discretionary appeal.

{¶21} There are two issues before the court in this case. The first issue is whether the court of appeals erred in reversing the trial court's denial of W&LE's motion for partial summary judgment. Only if we find that the reversal was proper

---

9. Bonacorsi cross-appealed with regard to the trial court's failure to submit the issue of punitive damages to the jury. See footnote 3.

do we reach the second issue in this case, which is whether the court of appeals erred in interpreting the jury's response to Interrogatory One-A to mean that the jury found W&LE negligent only with regard to Bonacorsi's inadequate-signalization claim.

{¶22} With regard to the first issue, Bonacorsi claims that the court of appeals erred in two respects. First, he argues that the court erred in finding that Kirkland's affidavit proved that federal funds paid for the installation of the Howe Road crossbuck sign. In this respect, Bonacorsi renews the argument he made to the trial court and the court of appeals, i.e., that Kirkland lacked personal knowledge of the statements made in her affidavit.

{¶23} Second, Bonacorsi argues that the court of appeals erred in applying the holding in *Shanklin*, 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374, to this case. In this regard, Bonacorsi asserts that *Shanklin* applies only when federal funds are applied toward railroad crossing *improvement* programs and not when applied toward *experimental* programs such as the program under which the crossbuck sign at the Howe Road crossing was installed. Consequently, Bonacorsi argues, even if the court finds that Kirkland's affidavit does prove federal funding, his inadequate-signalization claim was not preempted because the federal regulation regarding sign adequacy, interpreted by the court in *Shanklin*, did not apply to the program responsible for installing the Howe Road crossbuck sign.

{¶24} Our review of summary judgment rulings is de novo. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. Accordingly, we apply the same standard as the trial court and court of appeals in this case. Civ.R. 56(C) provides that summary judgment shall be granted when the filings in the action, including depositions and affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶25} We first review Kirkland's affidavit to determine whether it establishes that federal funds paid for the installation of the Howe Road crossbuck

8

sign. Proof of federal funding is crucial to W&LE's preemption argument because the federal regulation that covers the subject of warning-device adequacy applies only to warning devices installed with federal funds. Section 646.214(b)(3)(i), Title 23, C.F.R. (see footnote 4); *Carpenter v. Consol. Rail Corp.* (1994), 69 Ohio St.3d 259, 263, 631 N.E.2d 607 ("Before a state law governing warning devices will be deemed preempted, federal funds must actually have been committed and spent").

{¶26} Civ.R. 56(E) requires that affidavits supporting motions for summary judgment be made on personal knowledge. *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 223, 631 N.E.2d 150. For obvious reasons, this is the same standard as applied to lay witness testimony in a court of law. Id.; Evid.R. 602. "Personal knowledge" is "[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said." Black's Law Dictionary (7th Ed.Rev.1999) 875. See, also, Weissenberger's Ohio Evidence (2002) 213, Section 602.1 ("The subject of a witness's testimony must have been perceived through one or more of the senses of the witness. * * * [A] witness is 'incompetent' to testify to any fact unless he or she possesses firsthand knowledge of that fact.").

{¶27} Kirkland explicitly states in her affidavit that she had "personal knowledge" that federal funds were used to install crossbuck signs at all Ohio railroad crossings marked with passive warning devices. In her deposition, however, Kirkland testified that ODOT was responsible for handling federal funds, that she did not work for ODOT, and that her knowledge that federal funds were used to install signs at railroad crossings came from other people.

{¶28} After reviewing Kirkland's deposition testimony we find that she clearly lacked the personal knowledge required by Civ.R. 56(E) to support the statements in her affidavit regarding federal funding. Consequently, we find that W&LE failed to prove that federal funds paid for the installation of the Howe Road

crossbuck sign.[10]   Because, at a minimum, federal funding is required to trigger preemption, we hold that W&LE's motion for partial summary judgment should not have been granted.

{¶29} Our holding renders moot Bonacorsi's second argument with regard to W&LE's motion for partial summary judgment, i.e., his assertion that *Shanklin* does not apply to this case.  In addition, we do not reach the second issue in this case, which was dependent on a finding that partial summary judgment was proper.

{¶30} For the foregoing reasons, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court and the verdict of the jury.

Judgment reversed.

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., KLINE and LUNDBERG STRATTON, JJ., dissent.

ROGER L. KLINE, J., of the Fourth Appellate District, sitting for COOK, J.

—————————————

**KLINE, J., dissenting.**

{¶31} I respectfully dissent.  In my view, the trial court and the court of appeals did not err when they considered Susan Kirkland's affidavit as admissible evidence because W&LE presented sufficient evidence to establish that the affidavit met the Civ.R. 56(E) "personal knowledge" requirement.  Kirkland's description of her job duties allowed an inference that she would be in a position to

---

10. We also note that W&LE failed to tender any documentary evidence to show that the state received money from the federal government to pay for the Buckeye crossbuck project or to show that there was an agreement executed by the federal government indicating that it would pay for the project.  A federal statute that was in effect at the time this project was allegedly funded required the Secretary of the United States Department of Transportation to enter into a formal project agreement with state transportation departments concerning projects that were to receive federal funding under Title 23, U.S.Code.  Former Section 110, Title 23, U.S.Code, 72 Stat. 894.  Although Kirkland testified in her deposition that there was an executed agreement between the state of Ohio and the FHWA regarding the project, and W&LE, in its brief submitted to this court, refers to a contract between the FHWA and the state of Ohio, no such agreement is contained in the record.

know if federal funds were used to install the crossbuck signs at the Howe Road crossing.

{¶32} I agree with the majority that a court ruling on a motion for summary judgment first must determine what evidence is admissible before it may construe that evidence in the opposing party's favor.  Civ.R. 56(E).  I further agree that the "personal knowledge" requirement set forth in Civ.R. 56(E) is the same standard contained in Evid.R. 602 for a lay witness testifying at trial.  The trial court has discretion in determining whether evidence is admissible.  See, e.g., *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 616, 687 N.E.2d 735.

{¶33} 1 McCormick on Evidence (5th Ed.1992) 40, Section 10, addresses the personal knowledge requirement by commenting:

{¶34} "A person who has no knowledge of a fact except what another has told him does not, of course, satisfy the requirement of knowledge from observation.  When the witness, however, bases his testimony partly upon firsthand knowledge and partly upon the accounts of others, the problem is one which calls for a practical compromise.  As a case in point, when a witness speaks of his own age or his kinship with a relative, the courts allow the testimony.  * * * In short, when the witness testifies to facts that he knows partly at first hand and partly from reports, the judge should admit or exclude according to the overall reliability of the evidence." (Footnotes omitted.)

{¶35} In *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 611 N.E.2d 955, the court of appeals upheld the trial court's admission of the testimony of a secretary for the purpose of showing the intention of her corporate employer.  The secretary had contact with the managers and the corporate employees and, essentially, ran the office.  Her bosses disclosed their intentions to her when they gave her instructions to perform the operations of the company.  The court concluded that she had based her testimony on personal knowledge.  "Her description of her job duties also allowed an inference that she

would be in a position to know the reasons for the various practices of the corporation." Id. at 597, 611 N.E.2d 955.

{¶36} The above McCormick quotation and the holding in *Akron-Canton Waste Oil* led this court in *Dublin City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1997), 80 Ohio St.3d 450, 687 N.E.2d 422, to interpret the personal knowledge requirement contained in Evid.R. 602 and find that a trial court may admit testimony based partly on firsthand knowledge and partly upon the accounts of others. This court found that a witness who had personal knowledge of a taxpayer's purchase of twelve parcels of property and a taxpayer's strategy in assigning an artificially high purchase price to one parcel could testify for the purpose of showing that this allocation did not reflect the true value of the parcel in question. The witness's job allowed him access to the following information:

{¶37} "[H]e attended and participated in corporate management meetings at which the sale and the strategy for allocating the purchase price were discussed. He oversaw 'property taxes, insurance, financial reporting, corporate, federal and state income tax filings, among other things.' His duties included administering the purchased properties. The [Board of Tax Appeals] could infer that he collaborated in devising the allocation strategy and could find that he incorporated the allocation decision in his reporting and filing duties." Id. at 453, 687 N.E.2d 422.

{¶38} In this case, the majority summarizes Kirkland's deposition testimony as revealing that "ODOT was responsible for handling federal funds, that [Kirkland] did not work for ODOT, and that her knowledge that federal funds were used to install signs at railroad crossings came from other people." However, a closer examination of Kirkland's deposition reveals that she testified as follows: As a manager of the safety programs at the Ohio Rail Development Commission, Kirkland was one of many people responsible for carrying out the Buckeye Crossbuck Program. The Public Utilities Commission of Ohio ("PUCO") designed

12

the crossbuck program and sent a directive to Kirkland's employer to implement it. As manager of the safety section, she was responsible for setting up the funds, reviewing the plans, and processing the bills for the crossbuck program. She attended meetings and helped set up the parameters and the procedures of the program. She helped draft an agreement between ODOT and W&LE in which ODOT agreed to supply all new crossbuck signs at passive crossings and to reimburse W&LE from federal funds for its installation costs.

{¶39} Kirkland also testified that she helped draft an agreement with the FHWA involving the administration of the crossbuck program. She and her staff had to follow the directives of the FHWA when they carried out the crossbuck program. The agreement provided that the federal funds for the signs and program would flow from the federal government to the state of Ohio by routing the funds from FHWA to ODOT. Kirkland's staff was involved in the payments made for the standard crossbuck signs at the Howe Road crossing. However, she stated that her knowledge that federal funds were used to install the crossbuck signs at the Howe Road crossing was based on what others told her. While administering the crossbuck program, her employer (the Ohio Rail Development Commission) was within ODOT and was called the Rail Division.[11] The ODOT Rail Division distributed an educational brochure for the Buckeye Crossbuck Program.

{¶40} Kirkland's deposition testimony reveals that her job allowed her access to information regarding the crossbuck program similar to that possessed by the witness in *Dublin Bd. of Edn*., 80 Ohio St.3d 450, 687 N.E.2d 422. As manager of the safety section, she set up the funds, processed the bills, and reviewed the plans of the program. She attended meetings where the parameters and procedures

---

11. At the time of her deposition, Kirkland and her attorney stated that her employer is affiliated with ODOT but is legally not a division of ODOT. The Ohio legislature "created the Ohio [R]ail [D]evelopment [C]ommission, as an independent agency of the state within [ODOT]." R.C. 4981.02(A). The director of ODOT is an ex officio member of the commission. Id.

were established, helped draft agreements involving ODOT, W&LE, and FHWA that included funding, and followed the directives of FHWA to carry out the program. Her description of her job duties allowed the trial court to infer that she would be in a position to know whether federal funds paid for the installation of the crossbuck signs at the Howe Road crossing. Therefore, Kirkland had personal knowledge to state in her affidavit that federal funds were used to install crossbuck signs at all passive crossings in Ohio. Consequently, the trial court did not abuse its discretion in considering this affidavit,[12] and the court of appeals did not err in finding that Kirkland had personal knowledge.

{¶41} I would affirm the court of appeals' judgment on the "personal knowledge" issue and address the other issues in this appeal.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

_____

Linton & Hirshman, Robert F. Linton, Jr., and Mark W. Ruf; Allen Schulman & Assoc., Inc., and Allen Schulman, Jr., for appellant.

Howes, Daane, Milligan, Kyhos & Erwin, L.L.P., Philip E. Howes and Thomas R. Himmelspach, for appellee.

Squire, Sanders & Dempsey, L.L.P., and Charles F. Clarke, urging affirmance for amicus curiae Association of American Railroads.

_____

12. The trial court implicitly found that Kirkland had personal knowledge when it overruled Bonacorsi's motion to strike the affidavit. However, the trial court never found that W&LE had established that federal funds were used to install the crossbuck sign at the Howe Road crossing. Instead, it denied the partial motion for summary judgment on another ground. Thus, the court of appeals had authority to review the "personal knowledge" issue but did not have the authority to find that federal funds were used to install the sign in question because it did not have anything from the trial court to review. See *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138; see, also, *Fulmer v. Insura Prop. & Cas. Co.* (2002), 94 Ohio St.3d 85, 99-100, 760 N.E.2d 392 (Cook, J., dissenting); *Bowen v. Kil-Kare, Inc.* (1992), 63 Ohio St.3d 84, 89, 585 N.E.2d 384.

Clark, Perdue, Roberts & Scott Co., L.P.A., and Paul O. Scott; and Dorothy H. Bretnall, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

_____