[Cite as *Thomas v. LSREF3 Bravo (Ohio), L.L.C.*, 2022-Ohio-4476.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Adam Thomas et al., | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 21AP-691 |
| v. | : | (C.P.C. No. 19CV-7446) |
| LSREF3 Bravo (Ohio), LLC et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 13, 2022

**On brief:** *Oliver Law Office*, and *Jami S. Oliver*, for appellants. **Argued:** *Jami S. Oliver*.

**On brief:** *Freund, Freeze, & Arnold*, and *Carl A. Anthony*, for appellees. **Argued:** *Carl A. Anthony*.

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Plaintiffs-appellants, Adam and Jackie Thomas, appeal from the decision of the Franklin County Court Common Pleas granting the motion for summary judgment in favor of defendants-appellees, LSREF3 Bravo (Ohio), LLC, n.k.a. Buckeye Owners, LLC, d.b.a. Alexander Court Apartments, Bell Partners, Inc., and Buckeye Owners, LLC, (collectively, "Alexander Court Apartments"). The Thomases sued their landlord for negligence after an unknown male physically assaulted Mr. Thomas in an authorized structure on the premises constructed by another tenant. Because the trial court did not err when it ruled that Alexander Court Apartments' duty of care did not encompass an unforeseen criminal act committed by a third party against a tenant, we affirm the judgment.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2}   Jackie and Adam Thomas began leasing an apartment at Alexander Court Apartments on May 7, 2010.  (Sept. 13, 2019 Compl. at ¶ 15.)  LSREF3 Bravo owned the apartment complex and Bell Partners, Inc. managed it.  (Nov. 6, 2019 Answer at ¶ 2; Obuchowski Dep. at 15.)  In August of 2018, Andrea Obuchowski was the property manager at Alexander Court Apartments.  (Obuchowski Dep. at 6.)  At that time, "there were weekly property inspections and monthly property inspections." *Id*. at 47.  In addition, management had a "policy" of daily inspections being conducted by "onsite" maintenance and staff employees.  *Id*. at 48-49.

{¶ 3}   Prior to August of 2018, Ms. Obuchowski had received "reports of people trespassing" and people using drugs from several residents.  *Id*. at 53.  She emailed "crime alert notices" to residents and encouraged them to contact the police about any criminal activity.  *Id*. at 53-54.  Ms. Obuchowski remembered that Mr. Thomas "had complained about drug paraphernalia" and "inappropriate behavior" occurring near a storage unit at the complex.  *Id*. at 55.  In response, lights were installed to discourage the activity.  *Id*. at 56.  Alexander Court Apartments did not have any security personnel in 2017 or 2018.  *Id*. at 20-21.  Nevertheless, "[t]here had been no prior reports of physical altercations or violence on the premises of Alexander Court Apartments, including the wooded area and the tree house."  (Obuchowski Aff. at ¶ 10.)

{¶ 4}   In 2017, Ms. Obuchowski discovered during a quarterly property inspection that a resident had constructed a treehouse on the premises.  (Obuchowski Dep. at 21.)  When she contacted the resident, he told her that he had "built it for his kids" so that they had "a place to play and be near their home." *Id*. at 23.  Ms. Obuchowski told the resident that "he didn't have permission to put it up and that it needed to be taken down." *Id*. at 23-24.  The resident did not remove the treehouse and, in 2018, Ms. Obuchowski "sent them notices to remove" it.  *Id*. at 24.  She "didn't see it necessarily as a danger," but wanted the treehouse removed because it "was not supposed to be there." *Id*. at 39-40.  Because the resident still did not remove the structure, Alexander Court Apartments did not renew their lease, which terminated on July 27, 2018.  *Id*. at 26.

{¶ 5}   Mr. Thomas also remembered the treehouse being present at Alexander Court Apartments for over a year. (Adam Thomas Dep. at 24.)  He recalled drug paraphernalia being "left around" the structure on multiple occasions, including

"[h]ypodermic needles and leftover marijuana cigarettes." *Id*. at 26. He did not see anyone actually using drugs there, nor did he recall any incidents of violence associated with the treehouse. *Id*. at 25-26. Mr. Thomas complained to property management and maintenance more than five times about the drug paraphernalia. *Id*. at 27-28. He was also concerned because children played in the area around it and believed it posed a danger because there were "[n]o lights" there and children could fall off of it. *Id*. at 29. Mr. Thomas also felt the treehouse was unsafe because it appeared unfinished and had "no handrail up the stairs." *Id*. at 30. He was also concerned about its height and that there were "nails on the ground" and "nails sticking up from the wood." *Id*. at 31.

{¶ 6} Mrs. Thomas recalled that there was "lots of traffic" in the wooded area near the treehouse, where people would engage in drug use and sexual activity. (Jackie Thomas Dep. at 9-10.) She also believed the structure was unsafe and saw "nails sticking out" of it. *Id*. at 10, 12.

{¶ 7} On August 1, 2018, Mrs. Thomas left the apartment with the dogs when she "saw lights and heard some people" at the treehouse. *Id*. at 19. One of the dogs ran towards the treehouse and Mrs. Thomas went after him into the wooded area. *Id*. at 20-21. She went up into the treehouse and "encountered a girl sitting on the bench" inside. *Id*. at 21. Mrs. Thomas asked her to leave, stating "this is not your property, you shouldn't be up here," when a man "came around the corner and started yelling" at Mrs. Thomas. *Id*. at 22. The man "seemed like he was on drugs" and "was not in [a] right state of mind." *Id*. at 27. Mrs. Thomas called out for her husband. *Id*. at 23. Mr. Thomas arrived, scaled the treehouse steps, and also asked the people to leave. *Id*. at 25. The man pushed Mr. Thomas and the couple fled. *Id*. at 26. Mrs. Thomas went after one of the dogs who attempted to chase them and returned to find her husband laying on the ground. *Id*.

{¶ 8} Mr. Thomas recalled that when the man pushed him, he "fell through the guardrail" and onto the ground, breaking his arm. (Adam Thomas Dep. at 36, 42.) Mr. Thomas "was knocked out from the fall," and when he came to, he felt that something was wrong with his arm. *Id*. at 42. His wife called an ambulance and the police, who initiated a felony assault investigation. *Id*. at 42-43. Nothing ever came of the investigation. *Id*. at 44. Alexander Court Apartments began removing the treehouse after the incident and it was entirely removed by September 2018. (Obuchowski Dep. at 29.)

{¶ 9} The Thomases filed suit against the appellees on September 13, 2019. They alleged a negligence claim based on the alleged qualified nuisance of the treehouse breaching appellees' duty of care to "maintain[] the premises in a reasonably safe condition," which resulted in Mr. Thomas's injuries. (Sept. 13, 2019 Compl. at ¶ 24-34.) The Thomases also alleged a breach of contract claim arising from their rental agreement, as well as a claim for loss of consortium and a subrogation claim arising from Mr. Thomas's health insurance claims. *Id.* at 35-47.

{¶ 10} Appellees moved the trial court for summary judgment on September 22, 2020. They argued that the felony assault on Mr. Thomas was not reasonably foreseeable and that they did not owe him a duty of care to protect him from a third party's criminal act.

{¶ 11} The Thomases responded by asserting that although appellees may not have a duty to protect their tenants from a third party's criminal acts, "landlords do have a duty to take *reasonable* precautions to provide security in common areas" and to maintain conditions in such areas that prevent injury. (Feb. 22, 2021 Memo. in Opp. at 9.) They asserted that a reasonable jury could find that the treehouse created a foreseeable risk of the harm that occurred, and that summary judgment was therefore inappropriate. *Id.* at 12.

{¶ 12} The trial court granted the motion for summary judgment on April 26, 2021. It reasoned that even though appellees "had prior knowledge of the existence [of] and the dangerous condition of the treehouse and the drug activity at the property, this information did not create a substantial likelihood that a violent offense would occur" on the premises. (Apr. 26, 2021 Decision & Entry at 6.) Thus, the trial court ruled that Alexander Court Apartments "did not have a duty to protect Mr. Thomas from the unforeseeable criminal act of the unknown male who pushed" him off the treehouse. *Id.* Additionally, the trial court found that although the Thomases had submitted evidence to show that appellees "were aware of the dangerous condition of the treehouse," the trial court did "not find that [appellees'] failure to provide for safe and sanitary common areas under R.C. 5321.04(A)(3) proximately caused Mr. [Thomas's] injuries." *Id.* at 7. The Thomases' breach of contract claim survived summary judgment but was subsequently dismissed with prejudice pursuant to an agreement of the parties. (Nov. 22, 2021 Agreed Order.)

{¶ 13} The Thomases appealed, asserting the following assignment of error:

> THE TRIAL COURT ERRED IN GRANTING SUMMARY
> JUDGMENT IN FAVOR OF DEFENDANTS-APPELLEES
> WHEN THE COURT HELD, AS A MATTER OF LAW, THAT
> THE LANDLORD OWED NO DUTY TO PROTECT
> PLAINTIFFS-APPELLANTS FROM HARM THAT WAS
> "REASONABLY FORESEEEABLE," INCLUDING VIOLENT
> CRIMINAL ACTIVITY THAT WAS MADE POSSIBLE BY
> DEFENDANTS-APPELLEES' OWN ACTIONS.

## II. STANDARD OF REVIEW

{¶ 14} An appellate court applies a de novo standard when reviewing a ruling on a motion for summary judgment under Civ.R. 56. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24. Thus, we must "apply the same standard as the trial court" when it ruled on appellees' motion. *Id.* Under Civ.R. 56(C), a court must enter summary judgment if the evidence supporting the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A summary judgment shall not be rendered unless it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." *Id.*

## III. ANALYSIS

{¶ 15} "In general, a cause of action for negligence requires proof of (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) breach of that duty, (3) a causal connection between the breach and injury, and (4) damages." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, ¶ 23. "The failure to prove any one of these elements is fatal to a claim of negligence * * *." *Rieger v. Giant Eagle, Inc.*, 157 Ohio St.3d 512, 2019-Ohio-3745, ¶ 10.

{¶ 16} "The existence of a duty in a negligence action is a question of law for the court to determine." *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). "The standard of conduct as to due care to be exercised by one for the protection of others may be specifically established by legislative enactment; by judicial decision; or, in the absence of legislative enactment or judicial decision, by a consideration of the facts and circumstances of a particular case." *Eisenhuth v. Moneyhon*, 161 Ohio St. 367 (1954), paragraph one of the

syllabus. "As a general rule, landlords have no duty to protect their tenants from the criminal acts of third persons." *Doe v. Beach House Dev. Co.*, 136 Ohio App.3d 573, 580 (8th Dist.2000). "While the landlord has some duty to provide secure common areas in an apartment complex, he is not an insurer of the premises against criminal activity." *Sciascia v. Riverpark Apts.*, 3 Ohio App.3d 164, 166 (10th Dist.1981).

{¶ 17} The Thomases argue that "[t]he trial court misapplied the law governing the duties of landlords to tenants." (Appellate Brief of Plaintiffs-Appellants, Thomas (hereinafter, "Appellants' Brief") at 24.) To support their contention of error, they cite the discussion of a landlord's duty of care in *Lindsay P. v. Towne Properties Asset Mgt. Co.*, 12th Dist. No. CA2012-11-215, 2013-Ohio-4124. *Lindsey P.* reversed the trial court's grant of summary judgment after identifying genuine issues of material fact as to the foreseeability of a tenant raping the plaintiff, another tenant. The landlord "was well aware of the history" of harassment, threats, and "escalating nature of [the] conduct" of the tenant who raped the plaintiff. *Id.* at ¶ 29-31. This "totality of the circumstances" demonstrated a genuine issue of material fact as to whether the landlord "may have been aware of the foreseeability" of the criminal act. *Id.* at ¶ 32. The portion of *Lindsey P.*'s definition of duty cited by the Thomases states that

> if a "special relationship" exists between plaintiff and defendant, that defendant's duty to protect the plaintiff from harm caused by a third party may exist. *Johnson v. Spectrum of Supportive Services*, 8th Dist. Cuyahoga No. 82267, 2003-Ohio-4404, ¶ 23. Such a duty exists when the landlord "should have reasonably foreseen the criminal activity and failed to take reasonable precautions to prevent such activity." *Id.* at ¶ 18. However, it is not necessary that the defendant should have anticipated the specific injury. *Profitt v. Tate Monroe Water Assn., Inc.*, 12th Dist. Clermont No. CA2012-10-072, 2013-Ohio-2278. Instead, the "test for foreseeability is whether a reasonably prudent person, under the same or similar circumstances as the defendant, should have anticipated that injury to the plaintiff or to those in like situations is the probable result of the performance or nonperformance of an act." *Id.* at ¶ 19, citing *Commerce & Industry Ins. Co. v. City of Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989).

*Lindsey P.*, 2013-Ohio-4124 at ¶ 20.

{¶ 18} Based on Alexander Court Apartments' knowledge of the condition of the treehouse, the "illegal drug activity, drug paraphernalia and needles, and sexual activity" of trespassers in the vicinity, the Thomases argue that the trial court "should have concluded that some injury to some person was reasonably foreseeable." (Appellants' Brief at 24.)

{¶ 19} "Some injury to some person" is an unjustifiably expansive definition of what a landlord should reasonably foresee that *Lindsey P.*'s definition of duty does not support. The Thomases seize upon the proposition that a defendant need not "have anticipated the specific injury" to assert that the attack on Mr. Thomas was reasonably foreseeable. *Lindsey P.*, 2013-Ohio-4124 at ¶ 20, citing *Profitt v. Tate Monroe Water Assn., Inc.*, 12th Dist. No. CA2012-10-072, 2013-Ohio-2278 ¶ 19. But the injury must have been *reasonably* foreseeable, even if not specifically anticipated. The condition of the treehouse and the presence of trespassing drug users cannot be said to reasonably portend the violent injury that Mr. Thomas suffered. Tetanus from stepping on one of the protruding nails, perhaps, or a fall from the steps that lacked a handrail. But neither the Thomases nor appellees admit of any history of crimes of violence of any sort associated with the structure. (Adam Thomas Dep. at 25-26; Obuchowski Aff. at ¶ 10.)

{¶ 20} Furthermore, the Thomases' briefing tellingly omits a key portion of *Lindsey P.*'s discussion of duty:

> "The mere fact that misconduct on the part of another might be foreseen is not of itself sufficient to place the responsibility upon the defendant * * * it is only where the misconduct was to be anticipated, and taking the risk of it was unreasonable, that liability will be imposed for consequences to which such intervening acts contributed." [*Wagner v. Ohio State Univ. Med. Ctr.*, 188 Ohio App.3d 65, 10th Dist. No. 09AP-1031, 2010-Ohio-2561, ¶ 25]. Stated another way, "when liability is asserted against a landowner for the criminal acts of third parties, the burden is upon the plaintiff to establish that the owner knew or should have known about the assailant's dangerous propensities or knew the attack was imminent." [*Adkins v. RLJ Mgt. Co.*, 5th Dist. No. CT2011-0012, 2011-Ohio-6609, ¶ 15].

*Lindsey P.*, 2013-Ohio-4124 at ¶ 21.

{¶ 21} Here, the Thomases have submitted no evidence to show that Alexander Court Apartments knew or should have known about the dangerous propensities of the

unknown assailant, or that a violent assault would be the imminent result of an encounter at the treehouse. As discussed, there was no history of physical assault or violence at the treehouse.

{¶ 22} The Thomases also argue that the trial court erred by ruling that their negligence per se action failed as a matter of law because appellees did not violate their duty under R.C. 5321.04(A). (Appellants' Brief at 26.) The statute imposes several duties on a "landlord who is a party to a rental agreement," stating that the landlord must:

> (1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;
>
> * * *
>
> (3) Keep all common areas of the premises in a safe and sanitary condition.

R.C. 5321.04(A).

{¶ 23} The Thomases criticize the trial court for "us[ing] the same reasoning it used to find no duty under a negligence theory to find no duty under the statute." (Appellants' Brief at 27.)

{¶ 24} Although "a landlord's violation of the duties imposed by R.C. 5321.04(A)(1) or 5321.04(A)(2) constitutes negligence *per se,*\* * * a landlord will be excused from liability under either section if he neither knew nor should have known of the factual circumstances that caused the violation." *Sikora v. Wenzel*, 88 Ohio St.3d 493, 498 (2000). The undisputed evidence demonstrating that persons had trespassed in the treehouse to use drugs or loiter there for illicit purposes does not demonstrate that Alexander Court Apartments should have known that one of those persons would push Mr. Thomas over its railing to the ground, breaking his arm. Thus, the trial court did not err when concluding that the Thomases' claim failed when analyzed under the statutory duties of R.C. 5321.04(A), in addition to the common law definition discussed.

## IV. CONCLUSION

{¶ 25} We conclude that the trial court did not error when granting Alexander Court Apartments' motion for summary judgment on the Thomases' negligence claims.

Accordingly, we overrule their assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and SADLER JJ., concur.

_____