[Cite as *Starner v. Johnson*, 2025-Ohio-2131.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jeffrey Starner et al., | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 24AP-205 |
| v. | : | (C.P.C. No. 17CV-4726) |
| Neil Johnson et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 17, 2025

**On brief:** *Thomas C. Loepp, Law Offices, Co., LPA*, and *Thomas C. Loepp*, for appellants. **Argued:** *Thomas C. Loepp*.

**On brief:** *Porter Wright Morris & Arthur LLP*, and *Allen T. Carter*, for appellees Neil Johnson, Lawerence, Evans & Co., LLC, and 1212 Capital LLC. **Argued:** *Allen T. Carter*.

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Plaintiffs-appellants, Jeffrey Starner, individually and as trustee of the Merchants 5 Star Ltd. Employee 401(k)/PSP Benefit Plan, filed suit against defendants-appellees, Neil Johnson, Benjamin MacDowell, James Pack, Martha Kashner, Merchants Holding, LLC ("Merchants Holding"), Calypso Asset Management, LLC ("Calypso Asset Management"), Lawrence Evans & Co., LLC ("Lawrence Evans"),  and 1212 Capital, LLC ("1212 Capital") in the Franklin County Court of Common Pleas.  Mr. Starner's complaint stated seven counts against the defendants, alleging that they had colluded in a fraudulent scheme to convince him to sell his trucking company to them on the false premise that they would inject hundreds of thousands of dollars of working capital into the business as part

of the purchase, but instead sold the company's assets to line their pockets. Because Mr. Starner had previously obtained a judgment against Merchants Holding on a cognovit note, and the trial court determined that all the defendants were its privies and could have been sued in that case, it granted their motion for summary judgment on the basis of res judicata. Mr. Starner has appealed. The appellees have filed a "contingent" cross-appeal in the event we reverse. However, we find no error in the trial court's decision to grant summary judgment, and will therefore overrule their cross-assignments of error as moot and affirm the trial court's judgment.

## I.  Factual and Procedural Background

{¶ 2}  Mr. Starner was the owner of a trucking company ("M5S") that consisted of two related entities: Merchants 5 Star Ltd., the operating entity, and Merchants 5 Star, Inc., which owned the assets. In 2014, Mr. Johnson, Mr. MacDowell, Mr. Pack, and Ms. Kashner offered to purchase the company. They formed Calypso Asset Management, which was the sole member of Merchants Holding, the entity that purchased M5S.

{¶ 3}  On July 18, 2014, Mr. Starner, on behalf of Merchants 5 Star, Ltd. and Merchants 5 Star, Inc., entered into a stock and membership interest purchase agreement ("Purchase Agreement") with Merchants Holding. (Ex. A, May 24, 2017 Compl.) Merchants Holding agreed to pay Mr. Starner $400,000 for his ownership interest in the entities. Merchants Holding separately signed a cognovit note in favor of Mr. Starner to satisfy the purchase price. In addition, Merchants Holding agreed to "contribute working capital to the Companies to ensure their continued viability," which the Purchase Agreement stated would be "approximately" between $350,000 and $500,000. *Id.* at 10. Merchants Holding also agreed to assume a number of the companies' debts, and, in a separate agreement, to continue to employ Mr. Starner.

{¶ 4}  On October 13, 2015, Mr. Starner filed suit against Merchants Holding, alleging that it had breached the Purchase Agreement and was in default of the cognovit note. After the trial court entered judgment on the note, Merchants Holding filed a motion for relief from judgment under Civ.R. 60(B), presenting as defenses fraud, partial payment on the note, and allegations of Mr. Starner's misconduct. A magistrate held an evidentiary hearing on the motion on March 21, 2016, at which Mr. Starner, Mr. Pack, and Mr. Johnson testified.

{¶ 5} After the hearing, the magistrate issued findings of fact and conclusions of law, finding that the Purchase Agreement and the cognovit note were valid and bound the parties. (Ex. F, Dec. 22, 2023 Mot. Summ. Jgmt.) The magistrate noted that Mr. Pack had signed the cognovit note in his capacity as president of Merchants Holding, and that the note "was executed in connection with" the Purchase Agreement. *Id.* at 3. The magistrate rejected the allegations of fraud, finding that Mr. Pack and Mr. Johnson were "not credible and did not provide any operative facts" to support their allegations that Mr. Starner had concealed material facts prior to the transaction. *Id.* The magistrate also rejected Merchants Holding's assertion that Mr. Starner's "misconduct after the transaction" that had allegedly "interfered" with its ability to pay on the cognovit note constituted a defense to nonpayment. *Id.* at 4. In addition, the magistrate rejected the defense of partial payment, noting that the sole $2,000 payment was late and applied to arrears, and, under the terms of the note, "only could be considered as an interest payment and applied to the interest owed on the debt." *Id.* at 6.

{¶ 6} The magistrate also made the following findings concerning the "transaction between the parties [that] occurred on July 18, 2014" and the parties' testimony:

> The crux of the testimony was each party's understanding of the terms of the Agreement through the transition of ownership, the understanding of specific terms, such as working capital, the accounting of any income generated from the entities, what particular person/entity was entitled to certain monies, and whether either party breached the terms of the Agreement, which is the underlying contract that the Cognovit Promissory Note is based upon.
>
> . . .
>
> This Magistrate finds that the transaction between the parties occurred on July 18, 2014, the day the Stock and Membership Interest Purchase Agreement and Cognovit Promissory Note were executed.

*Id.* at 5-6.

{¶ 7} The magistrate concluded that Merchant's Holding had not presented a meritorious defense and recommended denying its motion for relief from judgment. The trial court adopted the magistrate's decision and denied the motion. Merchant's Holding

appealed, and this court affirmed. *Starner v. Merchants Holding LLC*, 2018-Ohio-1165 (10th Dist.).

{¶ 8} Mr. Starner filed the present lawsuit on May 24, 2017. He alleged that Mr. Johnson, Mr. MacDowell, Mr. Pack, and Ms. Kashner, representing Calypso Asset Management, "bolstered their credibility" with him during negotiations by falsely claiming that Lawrence Evans was an investment banking firm directing the transaction and that they had the funds to provide the working capital specified in the Purchase Agreement. (Compl. at 6.) However, Mr. Johnson was also "the Managing Partner and sole owner of Lawrence Evans," according to Mr. Starner, who claimed as well that Mr. Johnson and Mr. MacDowell passed as investment bankers. *Id.* at 15.

{¶ 9} Mr. Starner alleged that the individual defendants concealed these facts from him before he signed the Purchase Agreement, and alleged as well that Merchants Holding never had a bank account or cash prior to or after signing it. *Id.* In Mr. Starner's telling, the individuals and Calypso Asset Management "devised a scheme" in concert with Lawrence Evans to have 1212 Capital loan funds to the company after purchase before paying it back to the individuals as management fees. *Id.* at 7. According to Mr. Starner, Lawrence Evans was the sole member of 1212 Capital, and he was not aware of Calypso Asset Management and the defendants' plan to have loan proceeds from 1212 Capital used as the working capital required by the Purchase Agreement. *Id.* at 7-8. He alleged that 1212 Capital obtained a lien on the assets of M5S, which were then sold to repay the funds it had loaned. *Id.* In addition, Mr. Starner alleged that during the eight months after entering into the Purchase Agreement, Mr. Johnson, Mr. MacDowell, Mr. Pack, and Ms. Kashner "padded" the company operations and payroll to hire friends as management, paid themselves over $140,000 in unnecessary fees, and sold off the company's most valuable assets. *Id.* They allegedly installed themselves as company officers in order to "conceal their activities" from Mr. Starner and company employees. *Id.* at 9.

{¶ 10} These allegations formed the basis for claims alleging securities fraud, common law fraud, breach of contract, purported common law "aiding and abetting," civil conspiracy to commit fraud, a breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1132, and a claim seeking to pierce the corporate veil against Mr. Johnson, Mr. MacDowell, Mr. Pack, and Ms. Kashner.

{¶ 11} On December 23, 2023, all defendants joined in moving the trial court for summary judgment. They argued that because they were all in privity with Merchants Holding, and Mr. Starner had previously obtained a judgment against that entity, res judicata barred all claims in the complaint, except for the ERISA claim. They argued that the ERISA claim was subject to the exclusive jurisdiction of federal courts and should also be dismissed.

{¶ 12} The trial court granted the motion to dismiss on March 14, 2024. It agreed that res judicata barred Mr. Starner's claims, noting that "the facts alleged within the underlying Complaint are coterminous with the transaction" that formed the basis for the cognovit note judgment. (Mar. 14, 2024 Decision & Entry at 7.) Mr. Starner "could have raised" the claims stated in his complaint "at the time of the initial action but failed to do so." *Id.* The trial court found that all named defendants were in privity with Merchants Holding and were "bound to the initial judgment by and through their relationships with" that entity, and Mr. Starner therefore could have "involved" them in the previous case to assert claims against them. *Id.* The trial court did not address the ERISA claim or defendants' jurisdictional argument seeking its dismissal, but nevertheless invoked Civ.R. 54(B) in its decision, ordering the entry of judgment because there was no just reason for delay.[1]

---

[1] Civil Rule 54(B) states: "When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." Here, the trial court's decision ruling on the defendants' joint motion for summary judgment did not address Mr. Starner's claim under ERISA. However, the trial court concluded its decision by stating that it was "a final appealable order" and that there was "no just cause for delay." (Emphasis omitted.) (Mar. 14, 2024 Decision & Entry at 8.) This language was sufficient to express its "clear intent to enter a final order" under Civ.R. 54(B). *State ex rel. Dewine v. Ashworth*, 2012-Ohio-5632, ¶ 23 (4th Dist.) (finding that trial court substantially complied with Civ.R. 54(B) based on phrasing that was "nearly identical to the required language" under the rule and its "express characterization of the entry as a 'Final Appealable Order' "). In addition, the status of at least nine counterclaims asserted by defendants in the May 1, 2018 Counterclaim of Merchants Holding, LLC, and the Jan. 25, 2019 Answer and Counterclaim of the remaining defendants is unclear. Those counterclaims and Mr. Starner's "unresolved" ERISA claim "remain[] pending in the trial court" and will not be addressed in this appeal. *Dynes Corp. v. Seikel, Koly & Co.*, 100 Ohio App.3d 620, 643-44 (8th Dist. 1994) (holding that Civ.R. 54(B) "grants the trial court jurisdiction to adjudicate unresolved claims in a pending action even though adjudicated claims in that pending action which include the clause 'No just reason for delay' have already been appealed" where trial court's summary judgment rulings resolved only some claims of multiple parties).

{¶ 13} Mr. Starner as appealed, and asserts a single assignment of error:[2]

The Trial Court erred in its grant of summary judgment.

## II. Standard of Review

{¶ 14} An appellate court applies a de novo standard when reviewing a ruling on a motion for summary judgment under Civ.R. 56. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 2002-Ohio-2220, ¶ 24. Thus, we must "apply the same standard as the trial court" when it considered the motion for summary judgment, which is set forth in Civ.R. 56. *Id.* Under Civ.R. 56(C), a court must enter summary judgment if the evidence supporting the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A court must not grant summary judgment unless "minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made," and all evidence must be "construed most strongly in the [nonmoving] party's favor." *Id.* In addition, "the applicability of res judicata is a question of law," to which a de novo standard of review also applies. *Nye v. State Bd. of Examiners of Architects*, 2006-Ohio-948, ¶ 12 (10th Dist.).

## III. Analysis

{¶ 15} "The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 2007-Ohio-1102, ¶ 6, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381 (1995). Issue preclusion, which is not a factor in this appeal, "serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies." *Id.* at ¶ 7, citing *Fort Frye Teachers Assn. v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (1998). The application of the claim-preclusive aspect of res judicata "prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *Id.* at ¶

---

[2] As mentioned, appellees have asserted a cross-appeal under App.R. 3(C) stating three "contingent" assignments of error that would only be addressed if this court found Mr. Starter's appeal "meritorious." (Merit Brief of Appellees at 1-2.) Because we do not so find, the appellees' cross-appeal is dismissed as moot.

6, citing *Fort Frye Teachers Assn.* at 395. Otherwise stated, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava* at syllabus.

{¶ 16} Claim preclusion applies when a party demonstrates the following four elements: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Lycan v. Cleveland*, 2022-Ohio-4676, ¶ 23, quoting *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir. 1997). There appears to be little dispute between the parties concerning the first, third, and fourth elements. It is undisputed that the cognovit note judgment against Merchants Holding constituted a final, valid decision on the merits by a court of competent jurisdiction. This court previously affirmed the trial court's judgment in that case. *Starner v. Merchants Holding LLC*, 2018-Ohio-1165 (10th Dist.).

{¶ 17} In addition, this action arose out of the transaction that was the subject matter of Mr. Starner's action on the cognovit note. In that case, the magistrate's finding of facts described the Purchase Agreement as "the underlying contract that the Cognovit Promissory Note [was] based upon" and considered both to be a single "transaction between the parties [that] occurred on July 18, 2014, the day the Stock and Membership Interest Purchase Agreement and Cognovit Promissory Note were executed." (Ex. F, Mot. Summ. Jgmt. at 5-6.) In this action, Mr. Starner alleges that the individual defendants falsely represented that Lawrence Evans was an investment banking firm able to provide working capital to his company in order to lure him into the transaction that was the subject matter of the action on the cognovit note, and that the transaction was part of a conspiracy to funnel funds back to the individual defendants in the form of management fees. The allegations of mismanagement that occurred during the eight months after the transaction all arose out of the transaction, and Mr. Starner filed the action on the cognovit note approximately fourteen months after entering into the Purchase Agreement.

{¶ 18} With that timeframe in mind, there is no doubt that Mr. Starner could have brought any of the claims he now asserts in the previous action against Merchants Holding.

The "crux" of the parties' dispute, as the magistrate termed it, "was each party's understanding of the terms of the Agreement through the transition of ownership, the understanding of specific terms, such as working capital, the accounting of any income generated from the entities, what particular person/entity was entitled to certain monies, and whether either party breached the terms of the Agreement, which is the underlying contract that the Cognovit Promissory Note is based upon." (Ex. F, Mot. Summ. Jgmt. at 5.) Although he frames defendants' liability in terms of securities fraud and conspiracy in addition to fraud and breach of contract, the fact that "a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims." *Grava* at 382, quoting 1 Restatement of the Law 2d, Judgments, § 24, Comment c (1982).

{¶ 19} The main dispute is whether this action involves the same parties or their privies. For res judicata to apply, "the parties to the subsequent suit must either be the same or in privity with the parties to the original suit." *O'Nesti* at ¶ 9, citing *Johnson's Island, Inc. v. Bd. of Twp. Trustees*, 69 Ohio St.2d 241 (1982). Here, Merchants Holding was also a defendant in the cognovit note case. Calypso Asset Management is in privity with Merchants Holding because one entity's corporate ownership of another entity establishes privity. *Williamson v. Rodenberg*, 1997 Ohio App. LEXIS 2855, *8 (10th Dist. June 30, 1997) (barring subsequent action against parent corporation of wholly owned subsidiary that was defendant in prior action). Because "a mutuality of interest, including an identity of desired result, creates privity" between parties in two different actions, privity can be recognized with the aforementioned entities and 1212 Capital, the allegedly artificial investment firm that facilitated the transaction, as well as Lawrence Evans, its sole member. *Brown v. Dayton*, 89 Ohio St.3d 245, 248 (2000). All of these entities shared the desired result of defrauding him in the alleged conspiracy described in the complaint.

{¶ 20} Mr. Starner also seeks to pierce the corporate veil and impose personal liability on Mr. Johnson, Mr. MacDowell, Mr. Pack, and Ms. Kashner, all corporate officers or shareholders in those entities. Based on the allegations in the complaint that they participated in actions before the transaction date and in the eight months afterwards that abused the corporate form, he could have sought to pierce the corporate veil in the subsequently filed action on the cognovit note. *See Joseph D. Bettura Constr. v. Alpha*

*Framing & Constr.*, 1999 Ohio App. LEXIS 2967, *6 (7th Dist. June 23, 1999) (applying res judicata and holding that appellant "should have brought its claim to pierce the corporate veil and challenge the corporate status" of appellee during previous arbitration proceeding but "failed to do so"). Finally, Mr. Pack and Mr. Johnson engaged in "active participation in the original lawsuit" when they testified on behalf of Merchants Holding in its unsuccessful fraud defense in the cognovit action, which also "establish[es] privity" for the purpose of res judicata. *Brown* at 248.

{¶ 21} Mr. Starner does not contest much of the foregoing. Instead, he asserts that res judicata should not bar the present action because the defendants previously argued against its application when defending against a summary judgment motion that he filed in the trial court, and it is inconsistent for them to now argue that it should apply to defend against his claims. (Appellants' Brief at 18-19.) When Mr. Starner moved the trial court for summary judgment, he argued that res judicata entitled *him* to judgment as a matter of law on all of his claims and a counterclaim asserted by Merchants Holding because the magistrate had addressed a number of the factual issues relevant to those claims in the cognovit note action. (*See* Nov. 7, 2018 Pl.'s Mot. for Summ. Jgmt.) In support of that motion, he made all the arguments he now argues against. (*See id.* at 10-11 (arguing that all of Merchant Holdings' "co-Defendants were in privity with Merchant").)

{¶ 22} In other words, Mr. Starner argued for the application of offensive claim preclusion, and now claims that defendants' opposition to it undermines the application of defensive claim preclusion. It does not. "Offensive claim preclusion involves a situation in which a plaintiff seeks to bar a defendant from raising any new defenses, while defensive claim preclusion includes any scenario in which a defendant seeks to completely bar relitigation of a claim already determined in a prior lawsuit." *O'Nesti*, 2007-Ohio-1102, ¶ 14. The Supreme Court of Ohio stated that "the use of offensive claim preclusion is generally disfavored" in other jurisdictions, and, as a consequence, it "expressly adopt[s] that position" as well. *Id.* at ¶ 17. Accordingly, we reject Mr. Starner's assertion that the arguments raised to defend against the application of a doctrine rejected by the Supreme Court of Ohio undermine the application of res judicata in this case. He has failed to demonstrate that res judicata does not bar the claims he asserts, all of which he could have brought in the previous action. Because he did not, the trial court did not err when granting

summary judgment on the basis of res judicata.  Accordingly, the sole assignment of error is overruled.

## IV. Conclusion

{¶ 23} For the foregoing reasons, the sole assignment of error is overruled, and appellees' cross-assignments of error are overruled as moot.  Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BEATTY BLUNT and BOGGS, JJ., concur.

_____